UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ARNULFO BORGONIA, et al., Plaintiffs, v. G2 SECURE STAFF, LLC, Defendant. | Case No. 19-cv-00914-LB **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISSING CASE** Re: ECF No. 10 |

## INTRODUCTION

Plaintiffs Arnulfo and Maria Borgonia sued their former employer G2 Secure Staff, LLC, claiming wage-and-hour violations, wrongful termination, and other violations of California law.[1] The defendant moves to compel the plaintiffs to submit their claims to arbitration, citing arbitration agreements that the plaintiffs signed with G2.[2] The court held a hearing on April 25, 2019. The court grants the motion to compel arbitration and dismisses the case.

---

[1] Compl. – ECF No. 1-1 at 5–6 (¶ 6). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 10.

ORDER – No. 19-cv-00914-LB

# STATEMENT

## 1. The Arbitration Agreements

The plaintiffs both worked for G2 at San Francisco International Airport ("SFO"), Mr. Borgonia as a wheelchair agent (starting in 1997) and Ms. Borgonia as a security screener, wheelchair agent, and dispatcher (starting in 2001).[3] On October 27, 2005, each signed the following agreement:[4]

### Pre-Dispute Resolution Agreement

(Please read carefully)

> G2 Secure Staff, LLC (the "Company") attempts to avoid disputes with employees and to resolve issues that arise in a fair, reasonable and expeditions manner. However, the Company recognizes that differences may arise with employees, during employment, or following employment separation. To provide a fast, fair and inexpensive means of resolving disputes between the Company and the employees, the Company has instituted a mandatory binding arbitration program. This binding arbitration program does not replace current or future company internal dispute mechanisms. It is the Company's hope that most issues can be resolved internally between employees and their managers. However, if a dispute cannot be resolved between an employee and his/her manager, arbitration provides employees the avenue of having disputes heard and resolved quickly and efficiently by an experienced, neutral arbitrator.
>
> As part consideration for your employment, you and the Company agree that in the event a dispute arises between you and the Company (or its officers, directors, employees, representatives, successors, assigns, or agents in their capacity as such) regarding your employment, such disputes shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act. The obligation binds the Company as well as the employees. The agreement to arbitrate disputes does not prevent employees from seeking relief with a state or federal administrative agency, such as the Equal Employment Opportunity Commission. The Agreement is that the employees and the Company shall have disputes resolved through binding arbitration rather than the courts of law.
>
> If you have a dispute that should go to arbitration, you and the Company will select an artitrator [sic] who will be subject to disqualification on the same grounds as would apply to a judge in a court of law. The Company will pay the fees and costs of the Arbitrator, unless prohibited by the jurisdiction in which you live or were last employed by the Company, in which case the Company and you will share the costs. You and the Company shall each pay for your own costs and attorney's fees incurred,

---

[3] Compl. – ECF No. 1-1 at 6 (¶ 9) & 8 (¶ 17); A. Borgonia Decl. – ECF No. 11 at 21 (¶ 5); M. Borgonia Decl. – ECF No. 11 at 25 (¶ 5).

[4] Agreements — Elliot Decl. Exs. 1 & 2 – ECF No. 10-1 at 6, 8.

ORDER – No. 19-cv-00914-LB        2

including costs of discovery, if any. To the extent permitted by applicable law, all rules of civil procedure and evidence shall apply to arbitrations, and you and the Company may conduct discovery, as would be available according to applicable law. You and the Company may introduce witnesses, including expert witnesses, and state law of the state in which the claim arose, or federal law, or both, as applicable to the claim asserted, including all possible remedies. The arbitrator is unable to apply any different substantive law or remedies. The arbitrator shall render a decision and all awards shall include a written, reasoned opinion. Both the Company and you agree that by agreeing to binding arbitration, you both give up the right to trial by a jury.

Either you or the Company may bring an action in any court of competent jurisdiction to compel the arbitration award. If either one of you is opposing enforcement of an award, you must bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

If you refuse to arbitrate a matter covered by this agreement, and if a court orders the matter to binding arbitration, you agree to pay the Company's legal costs, including attorney's fees, incurred in enforcing the agreement.

This pre-dispute resolution agreement is not a contract of employment, expressed or implied. This agreement does not alter the "at will" status of your employment.

Should any term or provision, or portion thereof, be declared void or unenforceable, it shall be severed and the remainder of this agreement shall be enforced.

I have read and understand all of the above. I agree that by becoming an employee of G2 Secure Staff, LLC, I will resolve any disputes pertaining to my employment through binding arbitration.[5]

In the appropriate signature blocks, the plaintiffs each printed their names and signed and dated the agreement.[6] They acknowledge now that their signatures are on the agreement but do not remember signing them.[7] Whenever supervisors or Human Resources asked them to sign documents, it was at the beginning or end of a shift or during a break, and they were "just told to sign documents that were on the table. . . No explanations were made, and [they] usually did not have time to either read the documents or ask anyone about what [they] were signing."[8] "Most

---

[5] *Id.*

[6] *Id.*

[7] A. Borgonia Decl. – ECF No. 11 at 22 (¶ 13); M. Borgonia Decl. – ECF No. 11 at 26 (¶ 12).

[8] A. Borgonia Decl. – ECF No. 11 at 22 (¶ 13).

ORDER – No. 19-cv-00914-LB         3

likely, the Arbitration Agreement was mixed up with other blank documents that [they were] instructed to sign at the time."[9]

**ANALYSIS**

**1. Governing Law**

"The Federal Arbitration Act (FAA) requires courts to 'place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "Section 2 of the FAA makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (citing 9 U.S.C. § 2). "The final clause of § 2, generally referred to as the savings clause, permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (some internal quotation marks omitted) (quoting *Concepcion*, 563 U.S. at 339). "'Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration.'" *Id.* (quoting *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016)). Arbitration agreements can cover Title VII claims, as long as the employee enters into the arbitration agreement "knowingly." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323–24 (9th Cir. 2015).

The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The court determines whether the putative arbitration agreement is enforceable under the laws of the state where the contract was formed. *First Options of Chicago,*

---

[9] *Id.* (¶ 14).

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

In California, contractual unconscionability has both a procedural and a substantive component. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon*, 846 F.3d at 1260 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)). "Procedural and substantive unconscionability 'need not be present in the same degree.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910). "Rather, there is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910). "Under California law, 'the party opposing arbitration bears the burden of proving . . . unconscionability.'" *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

## 2. Application

The plaintiffs do not dispute that the arbitration agreements fall within the scope of the FAA.[10] Instead, they argue that (1) they are exempt from the FAA because they are transportation workers and (2) the agreements are unenforceable because they are unconscionable.[11]

### 2.1 Transportation-Worker Exemption

The plaintiffs contend that they are transportation workers who are exempt from the FAA, which exempts from its coverage "all contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[12] 9 U.S.C. § 1. The court

---

[10] Mot. – ECF No. 10 at 11 ("Defendant participates in ample interstate activity to bring the Arbitration Agreements under the purview of the FAA."); Opp. – ECF No. 11 at 7 ("Plaintiffs adopt the conclusion that Defendant's 'multistate nature' business operation satisfied the FAA's commerce requirement.").

[11] Opp. – ECF No. 11 at 6, 10.

[12] *Id.* at 10.

ORDER – No. 19-cv-00914-LB          5

holds that the plaintiffs are not transportation workers within the meaning of the FAA, and thus they are not exempt from the FAA.

The court must assess whether the § 1 exemption applies before ordering arbitration. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019). Courts construe § 1 narrowly because the FAA embodies a policy strongly favoring arbitration. *Circuit City Stores Inc. v. Adams*, 532 U.S. 105, 119 (2001); *Veliz v. Cintas Corp.*, No. C 03–1180 SBA, 2004 WL 2452851, at * 3 (N.D. Cal. Apr. 5, 2004); *see Gilmer v. Interstatel Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). "The plain meaning of the words 'engaged in commerce' is narrower than the more open-ended formulations 'affecting commerce' and 'involving commerce.' *See, e.g., Gulf Oil Corp. v. Cop Paving Co.*, 419 U.S. 186, 195 (1974) (phrase 'engaged in commerce' appears to denote only persons or activities within the flow of interstate commerce')." *Circuit City*, 532 U.S. at 118; *see also id.* at 112 ("Most Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce.'") (citation omitted); *id.* at 115 (the broader terms "affecting commerce" and "involving commerce" refer to "Congress'[s] intent to regulate to the outer limits of its authority under the Commerce Clause").[13]

The plaintiffs provided services such as wheelchair assistance and security screening. They worked at SFO — admittedly a hub for interstate transportation — but they worked for a company (G2) that provided aviation services such as ground handling, passenger assistance, terminal services, and special services.[14] Nothing in their jobs involved the interstate deliveries that exist in most cases applying § 1's exclusion. *See, e.g., New Prime*, 139 S. Ct. at 536, 539–543 (driver for interstate trucking company qualified as a transportation worker under § 1, even if he was an

---

[13] The exemption exists because by the time the FAA was passed, Congress had already enacted alternative employment-dispute-resolution schemes for many transportation workers and did not want to unsettle these arrangements in favor of whatever arbitration procedures the parties' private contracts might contemplate. *New Prime*, 139 S. Ct. at 537 (citing *Circuit City*, 532 U.S. at 121); *Circuit City*, 532 U.S. at 121 (when the FAA was passed, grievance procedures existed for railroad employees under federal law, and a more comprehensive statute providing for the mediation and arbitration of railroad-labor disputes was imminent).

[14] Compl. – ECF No. 1-1 at 5 (¶ 5).

ORDER – No. 19-cv-00914-LB     6

independent contractor); *Hardin v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140–41 (9th Cir. 2001) (delivery driver was engaged in interstate commerce that was exempt from the FAA when he contracted to deliver packages throughout the United States, with connecting international service); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 899 (2018) (collecting cases); *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at *1, 4 (N.D. Cal. Mar. 14, 2016) (FAA exemption did not apply to luggage-delivery driver who delivered delayed luggage to travelers in the Bay Area); *Veliz,* 2004 WL 2452851, at *6 (collecting cases). Moreover, "where the transportation of goods is not the bread and butter of the employer's industry, a plaintiff who does not directly move goods herself is not exempt from the FAA." *Veliz*, 2004 WL 2452851, at *1, 6 (sales representatives who delivered uniforms, picked up dirty uniforms for cleaning, restocked other supplies, and sold products were not "transportation workers" exempt from the FAA).

G2 provides aviation services, not services related to the transportation of goods. The plaintiffs provide only these ancillary services in a geographic area, confined to SFO. In these circumstances, courts hold that § 1's exemption does not apply. *See, e.g.*, *Vargas*, 2016 WL 946112, at *4; *see also Perez v. Globe Airport Security Serv., Inc.*, 253 F.3d 1280, 1283–84 (11th Cir. 2001) (pre-departure security agent at an international airport was not a "transportation worker" when she merely inspected and guarded goods in interstate commerce before their transport); *Cole v. Burns Int'l Security Serv.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997) (a security guard at a train station did not fall under the FAA's exemption).

The court follows these cases as persuasive and holds that the plaintiffs are not transportation workers and thus are not exempt under § 1 of the FAA.

### 2.2 Unconscionability

The plaintiffs contend that the arbitration agreements are procedurally and substantively unconscionable. As the parties opposing arbitration, the plaintiffs bear the burden of proving unconscionability.

### 2.2.1 Procedural Unconscionability

The plaintiffs have not born their burden of showing that the agreements are procedurally unconscionable. They contend that G2 rushed them into signing the agreements or effectively hid their importance. But the agreements here were stand-alone documents that cautioned the plaintiffs to read them carefully. The plaintiffs signed the agreements. No evidence supports a conclusion of procedural unconscionability.

### 2.2.2 Substantive Unconscionability

To be substantively unconscionable, "the agreement must be 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable,' or must 'shock the conscience,'" i.e., the agreement's terms must be "unreasonably favorable to the more powerful party." *Poublon*, 846 F.3d at 1261 (citing cases).

Here, the defendant will pay the costs of arbitration.[15] It confirmed that at oral argument. *Cf. Hughes v. S.A.W. Entm't, Ltd.*, No. 16-cv-03371-LB, 2018 WL 4109100, at *8 (N.D. Cal. Aug. 29, 2018) ("The Ninth Circuit has indicated that an employer may take an arbitration agreement — originally unconscionable because it requires an employee to bear half the cost of arbitration — and renders it non-unconscionable by agreeing to bear the full cost of arbitration) (citing *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016). The plaintiffs have not shown that the agreements are substantively unconscionable in a way that bars enforcement of the arbitration provision.

## 3. Enforceability Under California Contract Law

The plaintiffs make two arguments: (1) they did not consent to the agreements because they did not read them, and (2) there is no consideration because they were employed when they signed the agreements.[16] These arguments fail. First, the plaintiffs signed the agreements. "Under California law, a party can be bound by an arbitration clause even if he failed to read or

---

[15] Reply – ECF No. 15 at 11.

[16] Opp. – ECF No. 11 at 16–17.

understand it." *Reilly v. WM Financial Svcs., Inc.*, 95 Fed. Appx. 851, 852 (9th Cir. 2004) (citing *Bolanos v. Khalatian,* 231 Cal.App.3d 1586 (1991); *Madden v. Kaiser Foundation Hospitals,* 17 Cal. 3d 699 (1976)). Second, under California law, employers can implement policies that employees can accept by continuing their employment. *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000) (a party's acceptance of an agreement to arbitrate may be express or implied-in-fact where the employee's continued employment constitutes acceptance of the agreement); *Asmus v. Pacific Bell*, 23 Cal.4th 1, 11 (2000) ("California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment").

## CONCLUSION

The court grants the motion to compel arbitration and dismisses the claim. *Cf. Loewen v. Lyft*, 129 F. Supp. 3d 945, 966 (N.D. Cal. 2015) ("Because the Court concludes that arbitration should be compelled, it has the discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely. Neither side has presented any compelling reason to keep this case on the Court's docket and the case is hereby dismissed.") (citations omitted).[17]

This disposes of ECF No. 10.

**IT IS SO ORDERED.**

Dated: April 25, 2019

LAUREL BEELER
United States Magistrate Judge

---

[17] The defendant raised objections to the declarations submitted with the plaintiffs' opposition. Reply – ECF No. 15 at 13–14. Because the court finds in favor of the defendant and dismisses the case, the court declines to rule on this issue.